**TRANSPAC DRILLING VENTURE, 1983–63 by CRESTWOOD HOSPITALS, INC., Transpac Drilling Venture, 1983–1 by Crestwood Hospitals, Inc., Transpac Drilling Venture, 1983–2 by James M. Dobbins, Transpac Drilling Venture, 1983–4 by Bryan D. Burr, Plaintiffs–Appellants,**

**and**

**Transpac Drilling Venture, 1983–14, by Alister Corporation, Transpac Drilling Venture, 1983–38 by Lindsey & Hall, Inc., Plaintiffs,**

**v.**

**UNITED STATES, Defendant–Appellee.**

**No. 93–5045.**

United States Court of Appeals, Federal Circuit.

Feb. 8, 1994.

Arthur H. Boelter, Boelter & Gale, of Seattle, Washington, argued for plaintiffs-appellants. With him on the brief was John J. White, Jr. and Shawn M. Soderberg.

Sarah K. Knutson, Attorney, Department of Justice, of Washington, D.C., argued for defendant-appellee. With her on the brief were Michael L. Paup, Acting Assistant Attorney General, Gary R. Allen and Teresa E. McLaughlin, Attorneys.

Before NIES, Chief Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.

NIES, Chief Judge.

In the Internal Revenue Code of 1986 (26 U.S.C. § 11 *et seq.*), section 6226(b)(3) permits the "tax matters partner" of a limited partnership to file a petition on behalf of the partnership to contest adjustments to partnership income made by the Internal Revenue Service. The appeal in this case, which comes to us from the United States Court of Federal Claims (Margolis, J.), concerns this provision of the code. 26 Cl.Ct. 1245. The trial court dismissed the subject petitions concerning tax years 1983 and 1984, on the ground that none of the parties filing for the partnerships, Crestwood Hospital, Inc., James M. Dobbins, or Bryan D. Burr, was a "tax matters partner" (TMP) authorized to do so under the statute. We agree and, accordingly, affirm the judgments.

## I.

## BACKGROUND

Transpac Drilling Venture 1983–63, 1983–1, 1983–2, and 1983–4 (hereinafter TDV 1983–63, TDV 1983–1, TDV 1983–2 and TDV 1983–4) is each a limited partnership organized under the laws of Delaware. Crestwood Hospital, Inc., Bryan Burr, and James M. Dobbins were limited partners in one or more of these partnerships during the tax years 1983 and 1984.

Douglas C. Adams was one of two general partners for each of the limited partnerships during the tax years at issue. Adams was designated the TMP in the partnership agreements for the partnerships, dealt with the IRS as TMP, and held himself out to be TMP of the respective partnerships until January 30, 1990. The other general partner, Churchill Oil & Gas Corporation, forfeited its corporate charter in September 1984.

During 1986 or 1987, the Government began investigating Adams in connection with possible criminal violations for his activities with respect to the development, promotion and sale of tax shelter investment programs, including the various Transpac Drilling Ventures. On September 4, 1987, Adams entered into a plea agreement with the Offices of the United States Attorneys for the Southern District of New York and the District of New Jersey, pursuant to which Adams agreed, *inter alia*, to plead guilty to charges of conspiracy and aiding and abetting fraud by an investment counselor and to file amended personal federal income tax returns for the tax years at issue. The IRS was not a party to the plea agreement and remained free to pursue any lawful civil remedies it deemed appropriate against Adams.

The IRS conducted partnership level examinations of the TDV partnerships' tax returns filed for the taxable years 1983 and 1984 during 1988 and 1989 treating Adams as the TMP. At the conclusion of the examinations, the IRS issued notices of Final Partnership Administrative Adjustments (FPAAs) and mailed them to Adams, as TMP, on November 7 (TDV 1983–63), 9 (TDV 1983–1 and 1983–2), and November 17 (TDV 1983–4), 1989. Copies of the FPAA were also sent to the limited partners, including Crestwood, Burr and Dobbins, who are termed "notice" partners.[1]

Under the statutory framework, either the "tax matters partner" or any "notice partner" may challenge the FPAA in proceedings brought in the Tax Court, the appropriate United States District Court, or the Court of Federal Claims. Only one such petition for readjustment may go forward. *See* I.R.C. § 6226(b). If the TMP files a petition for readjustment in the Tax Court, the Court of Federal Claims or the appropriate federal district court, within 90 days of issuance of the statutory notice, any other action is precluded. I.R.C. § 6226(a), (b)(1). If the 90–day period expires without the filing of such a petition by the TMP, then any notice partner may file a readjustment petition within

---

1. Section 6231 of Title 26 of the United States Code defines a notice partner as a partner who is entitled to notice under 26 U.S.C. § 6223(a). Section 6223(a) provides that the Secretary must give notice of the beginning and completion of administrative proceedings under TEFRA to partners who have furnished their names and addresses to the Secretary at least 30 days before the notice is mailed to the tax matters partner. Subsection (b) indicates that subsection (a) does not apply to a partner if the partnership has more than 100 partners and the partner has less than a 1 percent interest.

the next 60 days in any of the courts in which the TMP could have filed. If more than one notice partner files a readjustment petition, then the first petition filed in the Tax Court (if any) goes forward, and all other petitions are dismissed. I.R.C. § 6226(b)(2). If no petition is filed in the Tax Court, then the first petition filed in a district court or in the Court of Federal Claims goes forward, and all other petitions are dismissed. I.R.C. §§ 6226(b)(3), (4).

■ The statute effectively permits the TMP to select the forum for the litigation by filing a timely petition. The selection of the forum may be considered by a TMP as an important advantage since significant differences exist between the various fora. Additionally, it must be noted that the aforementioned requirements for filing a petition are jurisdictional in nature because a petition filed within 90 days by a partner who is not a TMP does not effectively commence suit. *See Computer Programs Lambda, Ltd. v. Commissioner,* 89 T.C. 198, 202, 1987 WL 42563 (1987).

I.R.C. § 6231(a)(7)(A) permits a partnership to designate its TMP "as provided in regulations," so long as the person or entity chosen is a general partner in the partnership. If the partnership should fail to designate a TMP, then "the general partner having the largest profits interest in the partnership at the close of the taxable year involved" becomes the TMP. I.R.C. § 6231(a)(7)(B). However, by regulation certain general partners are excluded from serving as TMP, *e.g.,* one who is under investigation for criminal tax evasion. The I.R.C. further provides that the Secretary of the Treasury *may* designate a TMP for a partnership if no general partner has been designated as such, and it would be "impracticable to apply subparagraph (B)." I.R.C. § 6231(a)(7).

Adams, who received notice while TMP, filed no petitions. It is accepted for purposes of decision here that he orally resigned as TMP on January 30, 1990, and orally named a limited partner to act as TMP at that time. On February 9, 1990, a petition in the Court of Federal Claims for each partnership was filed by the named limited partner claiming to be the successor TMP.[2] On February 12, 1990, after these petitions for readjustment were filed, Adams executed a document "Resignation of Tax Matters Partner and Appointment of New Tax Matters Partner," for each of the partnerships in question. In each document, Adams stated that he was resigning as TMP, and that he was appointing taxpayers Crestwood, Dobbins and Burr as general partners of the respective partnerships for the tax years 1983 and 1984 "for the limited purpose of serving as TMP." Taxpayers each executed acceptances of their respective appointments on April 9, 1990. In March 1990, appellants also submitted consents by a majority in interest of the limited partners for the filing partner to serve as TMP in two of the partnerships.

The IRS administrative files do not contain any record of the resignation of Adams as any partnership's TMP or the designation of a successor. The first notice the IRS received was by the petitions filed in the Court of Federal Claims in February 1990, which state that on or about January 30, 1990 the original TMP, Adams, "resigned as TMP and agreed to the appointment of [the limited partner who filed] as TMP and as a general partner for the limited purpose of serving as TMP."[3]

The Government moved to dismiss each of the subject petitions for lack of jurisdiction on the ground that the petitions were filed during the 90–day period reserved exclusively for filing by a TMP and none of the petitioners who filed had that status. The trial court agreed. In addition, the court rejected appellant's various arguments for retroactive ratification of the petitions.

After the 90–day period during which only a TMP may file suit, other limited partners

---

**2.** The trial court found each petition was timely filed, *i.e.,* within 90 days of the issuance of the FPAA, despite the November 7, 1989, issue date of one of the FPAAs.

**3.** The petition filed by Dobbins inconsistently states in one place that Dobbins was appointed as successor TMP and in another that the substituted TMP is Crestwood. We will deem this an editing error.

in three of the four partnerships filed timely petitions in the U.S. Tax Court. Other protective petitions were filed in the Court of Federal Claims. The dispute is essentially over which forum will adjudicate the matters. If the petitions filed in the Court of Federal Claims within the 90–day period were effective, those suits preempt any in the Tax Court and vice versa.

## II.

## STANDARD OF REVIEW

Whether the Court of Federal Claims properly granted the government's motion to dismiss for lack of jurisdiction is a question of law subject to *de novo* review on appeal. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991).

## III.

## ANALYSIS

### A. *Tax Equity and Fiscal Responsibility Act*

A partnership is required to file an annual information tax return even though it is not a taxable entity for federal income tax purposes. I.R.C. §§ 701, 6031; 26 C.F.R. § 1.701–1. Each partner is liable for income tax in his or her individual capacity with respect to his or her share of partnership items of income, loss, deduction and credit. I.R.C. § 702; 26 C.F.R. § 1.702–1. Prior to 1982, adjustments to the tax treatment of partnership items had to be determined in separate proceedings involving each individual partner, resulting in duplication of administrative and judicial effort, inconsistent results and difficulty in reaching comprehensive settlements. *See Maxwell v. Commissioner,* 87 T.C. 783, 787, 1986 WL 22033 (1986).

To simplify the procedures for determining the tax liability of individual partners in a partnership, Congress enacted the Tax Treatment of Partnership Items Act of 1982

as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324. I.R.C. § 6231(a)(1). The provisions, set forth in Subchapter C of Chapter 63 of the Internal Revenue Code at §§ 6221–6233, establish procedures for determining tax treatment of partnership items on audit and for obtaining judicial review of those determinations. *See Maxwell v. Commissioner,* 87 T.C. at 787–88.

Under TEFRA, the IRS is required to give partners notice when it begins an administrative proceeding relating to a partnership item. I.R.C. § 6223(a)(1). TEFRA applies to all partnerships required to file a return under section 6031(a).[4] If the administrative proceeding results in any adjustments to partnership items, the IRS is required to mail a notice of a FPAA reflecting its determinations to the TMP for the partnership in question. I.R.C. § 6223(a), (d). Section 6231(a)(7) defines a TMP as follows:

(7) Tax matters partner. The tax matters partner of any partnership is—

(A) the general partner designated as the tax matters partner as provided in regulations, or

(B) if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership in the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing).

If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner.

### B. *Petitions as Filed Were Defective*

■■■■ The appellants here were not TMPs of the partnerships at the time of filing or at any time within the 90–day period

---

**4.** Section 6031 provides: "Every partnership (as defined in section 761(a)) shall make a return for each taxable year...." 26 U.S.C. § 6031(a). Section 761(a) defines partnership as "a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate." 26 U.S.C. § 761(a).

reserved for filing by a TMP. First, each was ineligible to be designated as TMPs under subsections (A) or (B) of § 6231(a)(7) because none was a general partner of the partnership on whose behalf the petition was filed. As the Court of Federal Claims noted, general partners assume unlimited liability for partnership debts under Delaware limited partnership law.[5] Dobbins, Burr, and Crestwood did not. They, at most, agreed to be general partners for the *limited purpose only* of serving as the TMP. Not having taken on general liability, they do not qualify as general partners and cannot be designated by the partners as TMPs under either paragraph A or B of the statute or under the Temporary Regulations implementing that provision. Temp.Treas.Reg. § 301.-6231(a)(7)–IT(b)(1) (1987). To hold that the requirement of the statute that the TMP must be a general partner could be so easily circumvented would effectively vitiate the statutory requirement.

Appellants argue, however, that there are circumstances where a limited partner may become a TMP. The IRS expressly has stated that it has the authority to appoint a limited partner as a TMP. Rev.Proc. 88–16, 1988–1 C.B. 691. Here, however, the IRS did not appoint the petitioners as TMPs. Indeed, the Secretary had not selected anyone to be "treated as the tax matters partner" as authorized in section 6231(a)(7) and was not even aware that Adams had resigned until after the subject petitions were filed.

■ Appellants next argue that section 6231(a)(7) and the Temporary Regulations do not control once the FPAA has been issued to a partnership. According to appellants, the TEFRA proceedings have two distinct stages: an administrative stage and a judicial stage, and the rights and responsibilities of the TMP differ in the two stages. Per appellants, the purpose of section 6231(a)(7) is only to set forth the criteria for the selection of a TMP when the partnership is before the Service. The TMP serves as a liaison between the Service and the partnership. If restricted to section 6231(a)(7), appellants argue, it could be impossible for some partnership to appoint a TMP and the Service has no incentive to do so. Thus, after issuance of the FPAA, appellants urge that the partnership should be able to designate a TMP of its own choosing from among any of the limited partners. We disagree.

Nothing in the statute restricts section 6231(a)(7) to pre-litigation. The TMP of a partnership is a continuing status until changed in accordance with the statute and regulations. Here nothing in the statute or regulations permitted the general partner, Adams, to appoint a new TMP of a partnership. Further, we have been pointed to no evidence in the record that Adams had authority to select or even propose a TMP candidate under the partnership agreement.

■ Finally, appellants argue that the statute requires the partnership to have a TMP for judicial proceedings. We disagree. The statute clearly contemplates suits by non-TMPs. While the TMP may act to preempt the rights of others to sue, the absence of a TMP is no different from the failure of a TMP to take timely action or to take no action at all.

For the foregoing reasons, we conclude that the petitions were not filed by an entity who was a TMP at the time.

## C. *Post–Filing Validation*

Appellants urge that steps have been taken and others could be taken to validate the petitions as of their filing date.

Appellants first suggest that the court should *sua sponte* appoint the filing partners as TMPs. They point out that a large percentage of partners voted, after the petitions were filed, in favor of appellants as their TMP.

■ Jurisdiction over a TMP complaint must have been acquired as of the date when the petition was filed or at least before expiration of the 90 day period in which a TMP may file and preempt other suits. No alleged validating action was taken within that

---

5. General partners of limited partnerships have "the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners." Del.Code Ann. tit. 6, § 17–403 (1974 & Supp.1988).

time. We question whether retroactive validation of a wholly defective complaint for the purpose of giving a court jurisdiction is ever appropriate. In this case, clearly it is not. Such action would be contrary to the statutory scheme in issue. Under the statute, the untimeliness or failure of action by a TMP gives rise to entitlements in other partners to file suit. Moreover, such rights have been exercised in this case. Thus, retroactive validation would void the rights of others, not merely preserve rights.

Appellants place great reliance on rulings of the Tax Court respecting post-filing appointments of TMPs or later ratifications by partners. However, we do not find that the cited Tax Court cases provide appropriate guidance here.

In *Computer Programs Lambda, Ltd. v. Comm'r*, 90 T.C. 1124, 1988 WL 54149 (1988), the Tax Court held that it had inherent power to appoint a limited partner to serve as a TMP, even though such authority is not granted under section 6231(a)(7), since the partnership had no eligible general partner and the IRS had not selected a TMP under section 6231(a)(7). *Id.* at 1127.

█ The facts are not entirely clear from the opinion in *Computer Programs* respecting how many petitions had been filed. The court mentions its previous opinion in the case in which it found all general partners were ineligible to serve as TMP; the "proper" petition by a notice partner filed on August 11, 1986; and other parties to the litigation under Section 6226(c) whose interests the court wished to protect. *Id.* at 1125. To facilitate the litigation, the Tax Court appointed a TMP solely for that purpose. The court's validation of the petition at the time of filing by appointment of a TMP was not an issue. Indeed, the court specifically made the date of appointment effective as of February 2, 1988, *id.* at 1128, clearly not the filing date of the litigation. Thus, this opinion lends no support for appointment of a court-designated TMP, retroactive to the filing date, in order to validate a purported TMP preemptive complaint. The TMP was

appointed merely to carry on the litigation, not to instigate it. We agree with the Court of Federal Claims that the court does not have inherent power to appoint anyone as TMP where the cases are not properly before the Court because the petitions were not properly filed.

Another case cited as authority for ratification, after the filing of a defective petition, *Mishawaka Properties Co. v. Comm'r*, 100 T.C. No. 22, 1993 WL 112454 (1993), is particularly inapt. In an attempt to avoid a tax assessment,[6] the *Mishawaka* partners sought to escape the Tax Court's jurisdiction over a petition filed by the managing partner, whom the IRS dealt with as TMP but who was not the TMP if the partnership were a general rather than a limited partnership. However, the filing partner was held to be the agent of *all* partners, including the partner who qualified as the TMP (if a general partnership) under Section 6231(a)(7)(B). The Tax Court held that the course of conduct of *all* partners before and after the filing indicated their approval of the petition at the time it was filed and, thus, the petition filed on their behalf, was held to invoke the court's jurisdiction. Unlike the partners here, the *Mishawaka* partners unsuccessfully sought to disavow the petition, not retroactively validate it.

█ *Chomp Assoc. v. Comm'r*, 91 T.C. 1069, 1988 WL 133256 (1988), also cited by appellants, rests on an unremarkable finding of fact that the petition in issue was filed by the TMP partner. *Montana Sapphire Associates Ltd. v. Comm'r*, 95 T.C. 477, 1990 WL 163978 (1990), holds only that the court has discretion to grant leave to amend a technically defective petition where there is evidence that the original signatory was duly authorized to file a petition on behalf of the TMP. Neither supports petitioners here. The record establishes unequivocally that petitioners here were principals signing as the purportedly new TMPs. They did not act or even purport to act on behalf of or as agent

---

6. The *Mishawaka* partners believed the period for assessment had expired unless delayed by a

properly filed petition.

or attorney for Adams as TMP.[7] We find no support for appellants' position that one entity may be substituted for another who filed the petition in order to create jurisdiction retroactively. Jurisdiction is never a matter of discretion. As we read its precedent, the Tax Court has held merely that it may, as a matter of discretion, permit amendment of a technically defective TMP petition to allow substitution of the correct party where a petition was signed by essentially an "alter ego" or agent of the TMP.

### D. *Appellants Have Not Been Denied Due Process*

Appellants argue that if section 6231(a)(7) and the Temporary Regulations are applicable during the judicial phase of the TEFRA proceedings, the partners' constitutional rights are impaired, since the IRS, the partnership's adversary, either is allowed to designate its opponent's representative, or is allowed to leave its opponent without a representative.

■ The IRS asserts that appellants' due process arguments are meritless since notice partners are permitted to file petitions after the 90 day period and did so in this case. The IRS further points out that a properly appointed TMP may intervene in any such action under section 6226(b)(5). Therefore, appellants and other limited partners will have a full opportunity to litigate the readjustment issue and have not been denied due process.

The due process arguments of appellants highlight the fact that this dispute is about choice of forum. Although appellants prefer to litigate their dispute in a forum other than the Tax Court, appellants have not been denied due process merely because, under the circumstances here, they must proceed in that forum.

### IV.

#### Conclusion

Having duly considered the above and all other of appellants' arguments, we affirm the

judgment of the Court of Federal Claims dismissing the petitions for lack of jurisdiction.

*AFFIRMED.*

---

7. We need not analyze the additional jurisdictional requirement that the partner filing a petition in the Court of Federal Claims must pay the amount of the tax deficiency. We do not have enough information respecting Adams' tax liability, if any.